UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| WILLIAM PETER BROWN,<br><br>      Plaintiff,<br><br>v.<br><br>MARK D. THORNTON; DENEZE THORNTON, his wife, and the marital community composed thereof; THE UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION and CUSTOM ENFORCEMENT (formerly known as the Immigration and Naturalization Service); UNITED STATES BORDER PATROL; and the CITY OF TRUTH OR CONSEQUENCES, NEW MEXICO,<br><br>      Defendants. | No. CIV 04-233 BRB/RLP |

MEMORANDUM OPINION AND ORDER

Plaintiff William Brown sued, among others, Defendant Mark Thornton (Thornton) and the City of Truth or Consequences, New Mexico (City). He claims, among other things, Thornton and the City violated his federal constitutional rights. The matter is before the court on various motions. See Docket Nos. 59, 65, 67, 68, 69, 70, 89, and 90. The court first considers

Thornton's motion for partial summary judgment on Plaintiff's excessive force claim, Docket No. 67, and then the City's motion to dismiss Plaintiff's municipal liability claim, Docket No. 70.  As discussed more fully below, the court's disposition of these two motions renders the remainder of the pending motions moot.

I.

The following facts are undisputed, admitted, or viewed in the light most favorable to Plaintiff.[1]  On March 11, 2002, Plaintiff rode his bicycle past the Thorntons' residence and shot their dog.  Plaintiff continued down the street.  Thornton's wife, Deneze, and family friend, Reverend John Cherry, gave chase.  They caught and confronted Plaintiff.  In response, Plaintiff pointed his pistol at them, causing Mrs. Thornton to leave the scene.  Reverend Cherry remained at the scene.

Mrs. Thornton thereafter spoke with her husband, Defendant Mark Thornton, on the telephone.  She apprised him of the situation.  Thornton, a United States Border Patrol agent, activated the lights and siren on his border

---

[1] Plaintiff failed to comply with Local Rule 56.1(b) when he responded to Thornton's motion for partial summary judgment.  As a result, all material facts set forth in Thornton's statement of facts are deemed admitted.  D.N.M. Local R. 56.1(b).  Nevertheless, the court reviewed all evidence submitted with the parties' various motions and memoranda, see Docket Nos. 71 and 86, and found only one disputed *material* fact:  Thornton's treatment of Plaintiff during his arrest.  The court will recite that fact in the light most favorable to Plaintiff.

patrol truck and proceeded to the scene.  As Thornton arrived on the scene, he opened the truck's door, stood behind the door, drew his service weapon, and pointed the weapon in the "low surge position."  Thornton told Plaintiff to get on his knees.  Plaintiff complied.  Thornton proceeded over to Plaintiff, "handcuffed [him], pulled [him] up and told [him] that he ought to kill [him] for shooting his dog."  Pl.'s Dep. at 133.  Thornton then threw Plaintiff down to the ground, hard enough to jar Plaintiff's teeth and almost knock the glasses off his face.  Id.  As Plaintiff fell to the ground, "[his] foot got twisted underneath [him] somehow, and [his] crotch landed on top of [his] foot."  Id. at 136.

Thornton then pulled Plaintiff from the ground and sat him down on the road.  Plaintiff sat on the road until officers from the City police department arrived and placed him under arrest.  The State later charged Plaintiff with two counts of aggravated assault with a deadly weapon (fourth degree felonies), one count of cruelty to animals (a fourth degree felony), and one count of negligent use of a deadly weapon (a petty misdemeanor).  Plaintiff has yet to be tried on the charges.  See generally State v. Brown, 87 P.3d 1073 (N.M. Ct. App. 2004) *cert. granted* 92 P.3d 11 (N.M. 2004).

II.

Count I of Plaintiff's complaint alleges Thornton violated his right to be free from excessive force in violation of 42 U.S.C. § 1983 and the Fourteenth

Amendment. Plaintiff also alleges in count I that the City's failure to adequately supervise and discipline Thornton constituted deliberate indifference to his right to be free from the use of excessive force. Thornton moved for partial summary judgment on Plaintiff's excessive force claim, arguing he is entitled to qualified immunity. The City moved to dismiss Plaintiff's municipal liability claim.[2] The court grants the motions.

A.

The Tenth Circuit has repeatedly explained that when a federal law enforcement officer commits an intentional tort, the victim has two avenues of redress: (1) he may bring a Bivens action against the individual officer based upon a constitutional violation; or (2) he may bring a common law tort action against the Government pursuant to the Federal Tort Claims Act (FTCA). Estate of Trentadue v. United States, 397 F.3d 840, 858 (10th Cir. 2005); Robbins v.

---

[2] Confusingly, the City requests the court to enter "summary judgment against Plaintiff on his § 1983 . . . failure to train claim[] . . . pursuant to Fed. R. Civ. P. 12." Plaintiff, in response, "elected to take the City at face value and treat [its] motion as a motion to dismiss for failure to state a claim[.]" Neither the City nor Plaintiff submitted any evidence in support of their memoranda of law on the municipal liability claim. The court therefore construes the City's motion as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See EEOC v. W.H. Braum, Inc., 347 F.3d 1192, 1195 (10th Cir. 2003) (explaining a motion to dismiss made after the pleadings are closed is properly characterized as a motion for judgment on the pleadings). Judgment on the pleadings is proper only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. Ramirez v. Dep't of Corrections, Colo., 222 F.3d 1238, 1240 (10th Cir. 2000).

Wilkie, 300 F.3d 1208, 1213 (10th Cir. 2002); Engle v. Mecke, 24 F.3d 133, 135 (10th Cir. 1994).  A Bivens action allows a plaintiff to recover money damages from a federal officer in his individual capacity.[3]  Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 397 (1971); Robbins, 300 F.3d at 1211.  A federal officer sued under Bivens may raise qualified immunity as a defense. Johnson v. Fankell, 520 U.S. 911, 914 (1997).

"The defense of qualified immunity is designed not only to shield public officials from liability, but also to ensure that erroneous suits do not even go to trial."[4]  Hinton v. City of Elwood, Kan., 997 F.2d 774, 779 (10th Cir. 1993).  To this end, the Tenth Circuit employs a burden-shifting framework when a public official raises qualified immunity on summary judgment.  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1311-12 (10th Cir. 2002).  The plaintiff bears the initial two-fold burden of demonstrating:  (1) the official's actions violated a constitutional right; and (2) the right allegedly violated was clearly established.

---

[3] By contrast, a claim under the FTCA allows a plaintiff to recover money damages from the Government for the wrongful acts or omissions of its employees acting in their official capacity.  28 U.S.C. § 1346(b)(1); Wark v. United States, 269 F.3d 1185, 1187 (10th Cir. 2001).

[4] A Bivens action is generally conterminous with an action against a state official under 42 U.S.C. § 1983.  Grandbouche v. Clancy, 825 F.2d 1463, 1465 (10th Cir. 1987).  For example, "[t]he qualified immunity rules apply equally in suits against state officers under § 1983 and suits against federal officers under Bivens."  Mick v. Brewer, 76 F.3d 1127, 1134 n.4 (10th Cir. 1996).  The reasoning in cases arising under § 1983 is therefore applicable in the Bivens context.  Robbins v. BLM, 252 F. Supp. 2d 1286, 1296 n.7 (D. Wyo. 2003).

Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996). If the plaintiff fails to carry his heavy burden, the public official prevails. Id. If the plaintiff carries his burden, the burden shifts back to the public official to demonstrate no genuine issues of material fact exist under the normal summary judgment standards. Olsen, 312 F.3d at 1312.

The Fourth Amendment provides the exclusive framework for analyzing "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen[.]" Graham v. Connor, 490 U.S. 386, 395 (1989). An officer's use of objectively unreasonable force violates the Fourth Amendment. Id. at 399. "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." Marquez v. City of Albuquerque, 399 F.3d 1216, 1220 (10th Cir. 2005) (internal quotations omitted). The objective-reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

B.

In this case, Plaintiff sued Thornton under § 1983, alleging the federal officer violated his rights under the Fourteenth Amendment. Pl.'s Compl. at ¶ 22. Section 1983, however, only applies to state actors. See 42 U.S.C. § 1983; District of Columbia v. Carter, 409 U.S. 418, 424 (1973) (explaining § 1983 "deals only with those deprivations of rights under the color of the law of any 'State or Territory.'"). Moreover, excessive force claims are analyzed *exclusively* under the Fourth Amendment. Graham, 490 U.S. at 395. The court therefore concludes Thornton is entitled to judgment as a matter of law because Plaintiff can prove no set of facts that would entitle him to relief on the theory alleged in count I of his complaint. Fed. R. Civ. P. 12(c); Ramirez, 222 F.3d at 1240.

Plaintiff's excessive force claim against Thornton nevertheless fails even *assuming* he properly plead a Bivens claim under the Fourth Amendment.[5] Thornton raised qualified immunity as a defense to Plaintiff's hypothetical Bivens claim. Thus, Plaintiff must show: (1) Thornton's actions violated a constitutional right; and (2) the right Thornton allegedly violated was clearly established. Relying on Carroll v. United States, 267 U.S. 132 (1925), Plaintiff appears to

---

[5] Plaintiff clearly did not plead a claim against the Government under the FTCA. Indeed, Plaintiff voluntarily dismissed the Border Patrol from this suit. Plaintiff also seeks damages against Thornton individually, thereby indicating he only sued Thornton in his individual capacity. Pl.'s Compl. at ¶ 47.

argue Thornton violated the Fourth Amendment because he arrested him without probable cause.[6] Probable cause clearly existed in this case, however, because Thornton had knowledge, grounded in reasonably trustworthy information, that Plaintiff committed a felony. See Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Thornton's Dep. at 137. In addition to being factually and legally incorrect, Plaintiff's probable cause argument is irrelevant to his *excessive force* claim.

Plaintiff also argues, without citation to any legal authority, that "no standard of reasonable police officer [is] to be applied" because Thornton testified he made the arrest as a "private citizen." Ironically, Plaintiff's Bivens action would fail as a matter of law if the court accepted this argument. See Bivens, 403 U.S. at 389, 397 (holding a cause of action exists against a *federal agent acting under color of his authority*); Romero v. Peterson, 930 F.2d 1502, 1507 (10th Cir. 1991) (holding a defendant must have been acting as an agent of the federal government to be classified as a "federal officer" for purposes of Bivens). Thornton, however, clearly arrested Plaintiff in his capacity as a federal law enforcement agent; indeed, he arrived at the scene in his Border Patrol truck,

---

[6] In Carroll, 267 U.S. at 162, the Supreme Court held an officer's seizure of "intoxicating liquor" from an automobile under § 26 of the National Prohibition Act did not violate the Fourth Amendment. Plaintiff's reliance on Carroll – the only federal case cited in his memorandum of law – is misplaced. Indeed, Carroll explained the rule that forecloses Plaintiff's probable cause argument: "a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony[.]" Id. at 156.

with lights and siren activated, and used his service weapon to effectuate the arrest. Thornton's Dep. at 192. Thornton's belief that he was acting as a "private citizen" is irrelevant because the objective-reasonableness inquiry under the Fourth Amendment is made without regard to the officer's underlying intent or motivation. Graham, 490 U.S. at 397.

Plaintiff's final argument, again made without citation to any legal authority, is that Thornton is not entitled to qualified immunity because "[a]s a matter of law, and proper police procedure, it is well known that even within their jurisdiction, police officers are prohibited from responding to calls involving their family due to heightened emotions that may not always be kept under control." Plaintiff does not cite any rule or policy of the Border Patrol that prohibits federal officers from responding to calls involving their family. Rather, Plaintiff relies upon the affidavit of Alan Baxter for such a rule of "standard police procedure." Plaintiff, however, failed to properly disclose Baxter's expert report pursuant to Fed. R. Civ. 26(a)(2)(B). See Docket No. 87. Plaintiff is therefore precluded from using such evidence at trial. See Fed. R. Civ. P. 37(c)(1). Moreover, even *assuming* Baxter's expert opinion could be introduced at trial, Plaintiff's argument still fails because "violations of state law and police procedure generally do not give rise to a 1983 [or Bivens] claim for excessive force." Marquez, 399 F.3d at 1222. Plaintiff's failure to cite any legal authority or

9

admissible evidence is fatal to his argument that Thornton is not entitled to qualified immunity. See United States v. Hardwell, 80 F.3d 1471, 1492 (10th Cir. 1996) (holding an issue waived when not supported with legal authority).

Further, Plaintiff's excessive force claim ultimately fails (even *assuming* he properly plead and did not waive the claim) because, taken in the light most favorable to him, the facts do not show Thornton's conduct violated his right to be free from excessive force. Saucier v. Katz, 533 U.S. 194, 201 (2001). Thornton knew the following when he arrived on the scene: (1) Plaintiff committed a felony (animal cruelty) which involved discharging a loaded firearm within close proximity of an occupied dwelling; (2) Plaintiff fled the scene of the initial felony; and (3) Plaintiff committed two more felonies (aggravated assault with a deadly weapon) when he pointed his firearm at Mrs. Thornton and Reverend Cherry.

A reasonable officer in Thornton's position would have considered Plaintiff's felonious actions extremely severe and perceived Plaintiff as an immediate threat. Plaintiff's flight from the scene of the original felony also raises an inference he was a flight risk. Moreover, Thornton was the only officer at the scene when he arrived and knew he would be required to secure an armed suspect. In such a tense and uncertain situation, Thornton's decision to draw his service weapon, handcuff, and throw Plaintiff to the ground was objectively

reasonable under the Fourth Amendment.  Graham, 490 U.S. at 396; Marquez, 399 F.3d at 1221; Hinton, 997 F.2d at 781.

That Thornton handcuffed Plaintiff before throwing him to the ground does not make his actions objectively unreasonable.  An officer does not instantly and completely eliminate all risk of harm when he handcuffs a suspect.  See United States v. Sanders, 994 F.2d 200, 209 (5th Cir. 1993).  Thornton had not secured the scene nor located Plaintiff's firearm at the time he threw Plaintiff to the ground.  Moreover, Thornton did not brutally throw Plaintiff to the ground.  To the contrary, Thornton's use of force merely "jarred" Plaintiff's teeth and did not even knock Plaintiff's glasses from his face.  Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment.  Graham, 490 U.S. at 396.  Plaintiff, as a result, failed to show Thornton's actions violated his constitutional rights.[7]

---

[7] The court alternatively finds Plaintiff failed to demonstrate the right Thornton allegedly violated was clearly established.  While the generalized right to be free from excessive force is established, see Olsen, 312 F.3d at 1314, the Supreme Court eschews such generalized analysis.  Saucier, 533 U.S. at 201 (explaining the clearly-established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition[.]").  Plaintiff bore the burden of demonstrating "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.  Plaintiff, however, presents no argument or authority to establish a reasonable officer would have considered handcuffing and throwing an armed suspect to the ground unlawful.

Thornton is thus entitled to qualified immunity on Plaintiff's federal excessive force claim.  As a result, Plaintiff's failure-to-train claim against the City fails as a matter of law even *assuming* the City could be held liable for failing to train a federal law enforcement officer.  But see Baker v. Monroe Township, 50 F.3d 1186, 1191 (3d Cir. 1995) (rejecting the argument that the township was liable for the actions of federal officers).  Plaintiff can prove no set of facts that would entitle him to relief because a municipality cannot be held liable where its officer or agent did not commit an underlying constitutional violation.  See  City of Los Angles v. Heller, 475 U.S. 796, 799 (1986); Marquez, 399 F.3d at 1225; Olsen, 312 F.3d at 1317-18; Hinton, 997 F.2d at 782.

III.

For the foregoing reasons, the court GRANTS Thornton's motion for partial summary judgment, Docket No. 67, and the City's motion for judgment on the pleadings, Docket No. 70.  The court ORDERS Plaintiff's claims against Thornton and the City in count I of his complaint be DISMISSED WITH PREJUDICE.  Having dismissed all claims over which original jurisdiction exists, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (counts II-XI).  See 28 U.S.C. § 1367(c)(3); Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1139 (10th Cir. 2004).

As a result, the court DENIES AS MOOT: (1) Thornton's "motion for reciprocal extension of time or alternatively for an extension of dispositive motions deadline," Docket No. 59; (2) Plaintiff's "motion for partial summary judgment re: privilege or defense of 'citizen's arrest,'" Docket No. 65; (3) the City's "combined motion to dismiss and motion for partial summary judgment on Plaintiff's negligent policy claims pursuant to [the] Tort Claims Act," Docket No. 68; (4) the City's "motion to dismiss Plaintiff's negligent and intentional infliction of emotional distress claims," Docket No. 69; (5) the City's "motion to extend time to file reply to motions to dismiss until August 5, 2005," Docket No. 89; and (6) Thornton's "motion for extension of time in which to reply in support of motion for partial summary judgment," Docket No. 90. The court further ORDERS counts II-XI of Plaintiff's complaint be DISMISSED WITHOUT PREJUDICE.

        Entered for the Court
        this 28 day of July, 2005.


        Bobby R. Baldock
        United States Circuit Judge
        Sitting by Designation